1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10  KIM CARTER MARTINEZ,                    CASE NO. C21-5725 MJP

11              Plaintiff,                  ORDER DENYING DEFENDANT'S
                                            MOTIONS
12        v.

13  ZOOMINFO TECHNOLOGIES INC.,

14              Defendant.

15

16        This matter comes before the Court on Defendant's Motion to Dismiss, Request for

17  Judicial Notice, and Motion to Stay. (Dkt. Nos. 19, 21, 31.) Having reviewed the Motions and

18  Request, Plaintiff's Oppositions (Dkt. Nos. 24, 25-1, 35), the Replies (Dkt. Nos. 26, 27, 37),

19  Plaintiff's Notice of Supplemental Authority (Dkt. No. 38), and all supporting materials, the

20  Court DENIES the Motions and GRANTS in part and DENIES in part the Request for Judicial

21  Notice.

22

23

24

ORDER DENYING DEFENDANT'S MOTIONS - 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

**BACKGROUND**

Plaintiff Kim Martinez alleges that Defendant ZoomInfo Technologies Inc.'s use of her name, photo, and likeness in its advertisements to sell subscriptions to its database of 125 million business professionals and their employment information constitutes a nonconsensual commercial misappropriation of her persona in violation of California statutory and common law. Martinez brings individual and class claims on behalf of similarly-situated Californians whose likenesses ZoomInfo uses to advertise its subscription services.

In her complaint, Martinez alleges that ZoomInfo uses her "name, personal information, and persona in advertisements promoting website subscriptions" to ZoomInfo's database which contains personal, employment, and historical information about many individuals. (Complaint ¶¶ 2-4, 28 (Dkt. No. 1).) Martinez alleges that she is not a customer of ZoomInfo and has not consented to the use of her likeness or employment and personal history. (Id. ¶¶ 1, 3, 25-26.) She alleges that when a user searches for an individual either on a search engine or ZoomInfo, ZoomInfo displays "teaser profiles" showing some information about the individual and offering "full access" in exchange for a fee-based subscription. (Id. ¶¶ 5-6, 28-38.) It is this teaser profile about her that forms the focus of Martinez's claims. (Id. ¶¶ 28-38.)

Martinez alleges both a mental and economic injury. She claims she was "seriously distressed to discover that ZoomInfo is using her name and personal information to advertise subscriptions to zoominfo.com." (Compl. ¶¶ 2, 44.) She also alleges that ZoomInfo's misappropriation of her persona injured her privacy interest in and intellectual property rights to her persona. (Id. ¶¶ 17-19, 41-43.) Martinez alleges that ZoomInfo has committed the tort of misappropriation of a likeness and violated California's Right of Publicity Law, Cal. Civ. Code § 3344 ("Section 3344").

1   ZoomInfo seeks dismissal of Martinez's claims on the theory that she does not have

2   Article III standing. ZoomInfo also argues that its use of Martinez's persona is exempt from

3   Section 3344 because it is "newsworthy." And ZoomInfo argues that Martinez cannot obtain

4   statutory damages or equitable relief. Finally, ZoomInfo asks the Court to strike Martinez's

5   complaint under California's Anti-SLAPP law. As part of its Motion to Dismiss, ZoomInfo asks

6   the Court to take judicial notice of several website printouts. And it asks the Court to stay this

7   case pending the appeal of two different cases, one of which has been dismissed on appeal.

8                                    **ANALYSIS**

9   **A.      Motion to Dismiss Standard**

10   The Court may dismiss a complaint for "failure to state a claim upon which relief can be

11   granted." Fed. R. Civ. P. 12(b)(6). "A complaint may fail to show a right of relief either by

12   lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal

13   theory." Woods v. U.S. Bank N.A., 831 F.3d 1159, 1162 (9th Cir. 2016). In ruling on a Rule

14   12(b)(6) motion, the Court must accept all material allegations as true and construe the complaint

15   in the light most favorable to the non-movant. Wyler Summit P'Ship v. Turner Broad. Sys., Inc.,

16   135 F.3d 658, 661 (9th Cir. 1998). The complaint "must contain sufficient factual matter,

17   accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556

18   U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

19   **B.      Legal Standard Regarding Standing**

20   To establish Article III standing, a "[p]laintiff must have (1) suffered an injury in fact, (2)

21   that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be

22   redressed by a favorable judicial decision." Spokeo v. Robins, ___ U.S. ___, 136 S. Ct. 1540,

23   1547, 194 L.Ed.2d 635 (2016). "And standing is not dispensed in gross; rather, plaintiffs must

24

1   demonstrate standing for each claim that they press and for each form of relief that they seek (for

2   example, injunctive relief and damages)." <u>TransUnion LLC v. Ramirez</u>, ___ U.S. ___,141 S. Ct.

3   2190, 2208, 210 L. Ed. 2d 568 (2021).

4           "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a

5   legally protected interest' that is 'concrete and particularized. . . .' <u>Spokeo</u>, 136 S. Ct. at 1548

6   (quoting <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 560 (1992)). A particularized injury is one

7   that affects the plaintiff in a "personal and individual way." <u>Id.</u>; <u>see also</u> <u>Dutta v. State Farm</u>

8   <u>Mut. Auto. Ins. Co.</u>, 895 F.3d 1166, 1173 (9th Cir. 2018). And a concrete injury is one that is

9   "real and not abstract." <u>Spokeo</u>, 136 S. Ct. at 1548 (internal quotation marks omitted). "To be

10   'concrete' the injury 'must actually exist,'—that is, it must be 'real' and 'not abstract' or purely

11   'procedural'—but it need not be tangible." <u>Dutta</u>, 895 F.3d at 1173 (quoting <u>Spokeo</u>, 136 S. Ct.

12   at 1548-49).

13   **C.**    **Injury Under the Relevant California Laws**

14           ZoomInfo argues that Martinez has failed to allege or identify a concrete injury sufficient

15   to confer standing under Article III. To explain why this argument fails, the Court examines the

16   elements of a claim for common law misappropriation and a violation of Section 3344, including

17   the requirements of economic and mental injury. The Court then addresses the question of

18   whether Martinez has sufficiently alleged an economic and mental injury and explains why it

19   does not reach the Parties' dispute over the claimed statutory injury.

20           **1.**    **Claim Elements**

21           Martinez must satisfy the same elements to prove her common law and statutory

22   misappropriation claims. <u>See</u> <u>Downing v. Abercrombie & Fitch</u>, 265 F.3d 994, 1001 (9th Cir.

23   2001) (citing <u>Eastwood v. Superior Court</u>, 149 Cal. App. 3d 409, 416 (1983)). To sustain a claim

24

1   under Section 3344 or "commercial misappropriation, a plaintiff must prove: '(1) the defendant's

2   use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's

3   advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." Id. (quoting

4   Eastwood, 149 Cal. App. 3d at 417).

5       Because the Parties dispute what constitutes a concrete injury under these laws, the Court

6   examines the two relevant kinds of injuries: (1) economic, and (2) mental.

7       Economic Injury

8       As to both claims, a concrete economic injury can exist where there is readily identifiable

9   preexisting value in the misappropriated persona. See No Doubt v. Activision Publ'g, Inc., 192

10  Cal. App. 4th 1018, 1030 (Cal. Ct. App. 2011) This is particularly the case for celebrities

11  because "considerable money, time and energy are needed to develop one's prominence in a

12  particular field . . . to permit an economic return through some medium of commercial

13  promotion." Id. (quoting Comedy III Productions, Inc. v. Gary Saderup, Inc., 25 Cal.4th 387,

14  391, 106 Cal.Rptr.2d 126, 21 P.3d 797 (2001)).

15      Economic injury can also be demonstrated by non-celebrities even where the specific

16  economic value of the likeness can be difficult to discern. "California's appropriation statute is

17  not limited to celebrity plaintiffs." KNB Enters. v. Matthews, 78 Cal. App. 4th 362, 367 (2000).

18  "The statute's legislative history reveals section 3344(a) was intended to fill 'a gap which

19  exist[ed] in the common law tort of invasion of privacy' as applied to non-celebrity plaintiffs

20  whose names lacked 'commercial value on the open market.'" Miller v. Collectors Universe,

21  Inc., 159 Cal. App. 4th 988, 1002 (2008). Indeed, "[S]ection 3344 was enacted to provide a

22  'practical remedy for a noncelebrity plaintiff whose damages are difficult to prove. . . .'"

23  Orthopedic Sys., Inc. v. Schlein, 202 Cal. App. 4th 529, 546 (2011) (quoting Miller, 159 Cal.

24

App. 4th at 1002). Considering California law, the Ninth Circuit has noted "the appropriation of
the identity of a relatively unknown person may result in economic injury or may itself create
economic value in what was previously economically valueless." Motschenbacher v. R. J.
Reynolds Tobacco Co., 498 F.2d 821, 825–27 n.11 (9th Cir. 1974) overruled in part on other
grounds. And the Ninth Circuit has found a concrete injury where the plaintiff suffered no
specific loss but alleged that the defendant profited from the unauthorized use of their personal
information that had a corresponding financial value. Davis v. Facebook, Inc., 956 F.3d 589, 600
(9th Cir. 2020). And in a similar context, a district court recently explained that "[i]f a defendant
uses a plaintiff's name and/or likeness to advertise, then it can reasonably be inferred that the
name and/or likeness has some economic value, even if small." Callahan v. PeopleConnect, Inc.,
No. 20-CV-09203-EMC, 2021 WL 5050079, at *14 (N.D. Cal. Nov. 1, 2021).

Against this backdrop, Courts have found an economic injury by examining the economic
nature of a plaintiff's persona and the defendant's use thereof. For example, in KNB, the court
found economic injury by examining: (1) the sales defendant generated using the images; (2)
defendants' savings; and (3) defendants' saved time. See KNB, 78 Cal. App. 4th at 368.
Economic injury sufficient to satisfy Article III standing has also been found where the plaintiffs
alleged a "general commercial value" in their personal endorsements that Facebook deprived
them of by using their personas in endorsements without consent. Fraley v. Facebook, Inc., 830
F. Supp. 2d 785, 799 (N.D. Cal. 2011). In Fraley, the value of the endorsements could be
measured by assessing the additional profit Facebook earned by selling ads using the
endorsements. Id. And at least one court found an economic injury where the plaintiff's persona
was used to advertise a defendant's products or services and where the plaintiff was "denied the
economic value of their likeness." See PeopleConnect, 2021 WL 5050079, at *14.

1    Mental Injury

2         A plaintiff's mental injury from the non-consensual use of her likeness can be a concrete

3    injury sufficient to confer Article III standing. As the Ninth Circuit has recognized, "the injury

4    suffered from an appropriation of the attributes of one's identity may be 'mental and

5    subjective'— in the nature of humiliation, embarrassment, and outrage." Motschenbacher, 498

6    F.2d at 824 (citing Fairfield v. Am. Photocopy Equip. Co., 138 Cal. App. 2d 82, 86, 291 P.2d

7    194 (1955)). And this form of injury can be concrete and particularized even if non-economic in

8    nature.

9         **2.       Sufficiency of the Alleged Economic Injury**

10        Martinez has sufficiently alleged a concrete economic injury stemming from ZoomInfo's

11   use of her likeness.

12        Martinez alleges that her name, personal information, photographs, likeness, and persona

13   have commercial value and that the value is evident in ZoomInfo's reliance on this kind of

14   information to generate profit. (Compl. ¶¶ 9-10.) Martinez alleges that "ZoomInfo has

15   acknowledged the commercial value of Plaintiff's and Class members' names and information in

16   public statements to its investors." (Id. ¶ 9.) Specifically, ZoomInfo has allegedly referred to this

17   information as "an integral part of our products and services." (Id.) Martinez further alleges that

18   she has "economic interest in [her] name[] and personal information, which ZoomInfo has

19   stolen, and a privacy interest in [her] name[] and personal information, which ZoomInfo has

20   violated. (Id. ¶ 18.) And she alleges that "ZoomInfo has injured [her] by taking her intellectual

21   property without compensation; by invading her privacy rights protected by statute and common

22   law; and by unlawfully profiting from its exploitation of her personal information." (Id. ¶ 43; see

23

24

1   id. ¶¶ 59, 63.) She seeks both actual damages, including ZoomInfo's profit from is use of her

2   persona, and statutory damages, among others. (Id. ¶¶ 59, 64.)

3        These allegations are sufficient to show a concrete economic injury. Martinez identifies

4   the commercial value of her persona and the ways in which ZoomInfo's use of her persona

5   deprives her of its value. These allegations mirror those asserted in PeopleConnect, which were

6   sufficient to identify a cognizable injury. Compare id., 2021 WL 5050079, at *14 with Compl. ¶¶

7   8-10, 18. ZoomInfo fails to provide any legitimate basis to distinguish this case from

8   PeopleConnect. Instead, it focuses on a non-dispositive issue of whether the alleged injury was

9   an infringement of an intellectual property right. The correct inquiry is whether the plaintiff has

10   alleged a value in the persona and whether she has been denied the economic value from

11   defendant's non-consensual misappropriation. That has been sufficiently alleged here and it

12   demonstrates Article III standing.

13        ZoomInfo raises three primary arguments in opposition, none of which has merit.

14        First, ZoomInfo suggests that only celebrities or persons who can demonstrate the pre-

15   existing value of their persona can bring claims for misappropriation or violation of Section

16   3344. Courts have rejected this bright-line argument. "[N]othing in the text of the statute or in

17   case law . . . supports Defendant's interpretation of § 3344 as requiring a plaintiff pleading

18   economic injury to provide proof of preexisting commercial value and efforts to capitalize on

19   such value in order to survive a motion to dismiss." Fraley, 830 F. Supp. 2d at 806 (emphasis in

20   original); see also PeopleConnect, 2021 WL 5050079, at *14-15. There is "nothing requiring that

21   a plaintiff's commercially exploitable value be a result of his own talents or efforts in order to

22   state a claim for damages under § 3344." Fraley, 830 F. Supp. 2d at 808. Rather, the economic

23   value can be shown through a variety of ways, as explained above.

24

1    Second, ZoomInfo argues that non-celebrities can allege a concrete injury but only if they

2    can show an economic value created through an endorsement. (See Reply at 2.) While courts

3    have certainly found a concrete injury when there was an endorsement, there is no requirement

4    that there be an endorsement. Sessa v. Ancestry.com Operations Inc., No.

5    220CV02292GMNBNW, 2021 WL 4245359, at *6 n.4 (D. Nev. Sept. 16, 2021) (considering a

6    common law claim and explaining generally that "[w]hile advertisements depicting persons'

7    likeness often use the likeness to imply the individual endorses the product promoted, the use of

8    one's likeness to promote a product is sufficient to state a right of publicity claim—even if there

9    is no false impression of endorsement—as long as the person is recognizable" (citing

10    Motschenbacher, 498 F.2d at 824 n.11)). The correct inquiry is whether the misappropriation

11    causes an economic injury. And as noted in PeopleConnect, a plaintiff can satisfy the injury

12    requirement by alleging the defendant denied them the economic value of their likeness—as is

13    the case here. See PeopleConnect, 2021 WL 5050079, at *14. This follows the Ninth Circuit's

14    reasoning in Motschenbacher and the California Court of Appeals in KNB, both of which

15    recognize that non-celebrities can be injured even if the economic value in their persona is

16    minimal.

17    Third, ZoomInfo suggests that the Court should find an absence of concrete injury by

18    following the reasoning in Callahan v. Ancestry.com Inc., No. 20-CV-08437-LB, 2021 WL

19    783524, at *5 (N.D. Cal. Mar. 1, 2021). But this decision fails to convince the Court that

20    standing should be so narrowly construed. First, the decision suggests that non-celebrities may

21    only bring claims based on non-consensual endorsements. But, as explained above, that does not

22    track California law. Second, the decision concludes without reasoning that the plaintiffs had no

23    commercial interest in their personas. Without any reasoning, this determination provides no

24

1    guidance here as to the specific allegations presented by Martinez. The Court finds <u>Callahan</u>

2    unpersuasive and joins the decision in <u>PeopleConnect</u> in declining to follow it. <u>See</u>

3    <u>PeopleConnect</u>, 2021 WL 5050079 at *15.

4        **3.    Sufficiency of the Concrete Mental Injury**

5        Martinez has sufficiently alleged that ZoomInfo's use of her likeness has caused her a

6    "mental injury." (Compl. ¶ 44.) She alleges: "ZoomInfo's illegal actions caused Ms. Carter

7    Martinez mental injury and disturbed her peace of mind." (<u>Id.</u>) Martinez alleges that she "is

8    deeply uncomfortable in the knowledge that ZoomInfo is using her name and persona in

9    advertisements for a product with which she has no relationship and which she has no desire to

10    promote." (<u>Id.</u>) She alleges that "ZoomInfo's illegal use has left her worried and uncertain about

11    her inability to control how her name and persona is used" and that she "feels that ZoomInfo's

12    use of her name and persona is an alarming invasion of her privacy." (<u>Id.</u>)

13        Although ZoomInfo contends these allegations are inadequate, the Court finds them

14    sufficient to state a plausible claim of mental harm. ZoomInfo primarily argues that actionable

15    mental anguish must come from the use of the persona to falsely endorse a product. (Mot. at 10-

16    11 (citing <u>Fairfield</u>, 138 Cal. App. 2d 82).) But the case ZoomInfo relies on—<u>Fairfield</u>—did not

17    announce a requirement that the mental anguish must arise from a misleading endorsement.

18    Ultimately, what ZoomInfo argues is that the allegations do not satisfy the <u>Iqbal</u> and <u>Twombly</u>

19    standard because the information about which Martinez complains appears to be publicly

20    available. But whether the underlying information is publicly available does not mean that

21    ZoomInfo's use of it to advertise its services is exempt from liability. <u>See, e.g.</u>, <u>Downing</u>, 265

22    F.3d 994 (use of published photograph of surfing champions in advertising violated plaintiffs'

23    right of publicity despite prior publication). And under a 12(b)(1) challenge to standing, the

24

1   Court should not "import its analysis of the merits of Plaintiffs' § 3344 claim into its analysis of

2   constitutional standing." Fraley, 830 F. Supp. 2d at 801; see Catholic League for Religious and

3   Civil Rights v. City & Cnty. of S.F., 624 F.3d 1043, 1049 (9th Cir. 2010) (en banc). Here, the

4   Court finds the mental injury sufficiently alleged to satisfy Rule 8.

5            **4.      Statutory Injury**

6            The Parties dispute whether a bare procedural violation of Section 3344 is sufficient to

7   show a concrete injury. Given the Court's finding that Martinez has sufficiently alleged standing,

8   the Court declines to resolve the dispute because doing so is unnecessary.

9   **D.    Public Interest Exception**

10           ZoomInfo incorrectly contends that its use of Martinez's likeness falls within the

11  newsworthy exception in Section 3344.

12           Section 3344(d) provides that the "use of a name, voice, signature, photograph, or

13  likeness in connection with any news, public affairs, or sports broadcast or account, or any

14  political campaign, shall not constitute a use for which consent is required under [§ 3344(a) ]."

15  Cal. Civ. Code § 3344(d). One cannot maintain a claim under Section 3344 based on "'the

16  publication of matters in the public interest, which rests on the right of the public to know and

17  the freedom of the press to tell it.'" Downing, 265 F.3d at 1001 (quoting Montana v. San Jose

18  Mercury News, Inc., 34 Cal. App. 4th 790, 793 (1995)). "This First Amendment defense extends

19  'to almost all reporting of recent events,' as well as to publications about 'people who, by their

20  accomplishments, mode of living, professional standing, or calling, create a 'legitimate and

21  widespread attention' to their activities.'" Id. (quoting Eastwood, 149 Cal. App. 3d at 422).

22           Here, the use of Martinez's person to advertise subscriptions to ZoomInfo's platform

23  does not fit within the public interest exception. The teaser profile using Martinez's persona

24

1    invites visitors to subscribe to ZoomInfo's services to learn more about her without touching on

2    issues of general public interest. So while ZoomInfo may operate a database that might concern

3    matters of general interest, its specific use of Martinez's persona at issue in this case is purely

4    commercial in nature and does not fall within the Section 3344(d) carveout. See Fraley, 830 F.

5    Supp. 2d at 805; Abdul–Jabbar v. GMC, 85 F.3d 407, 416 (9th Cir. 1996) ("While [Kareem

6    Abdul–Jabbar's] basketball record may be said to be 'newsworthy,' its use is not automatically

7    privileged. GMC used the information in the context of an automobile advertisement, not in a

8    news or sports account. Hence GMC is not protected by section 3344(d)." (emphasis added)).

9    The Court rejects ZoomInfo's argument.

10   **E.    Statutory Damages**

11          ZoomInfo argues that statutory damages must be limited to mental anguish, and that the

12   Court must strike Martinez's request for statutory damages under § 3344 because she has not

13   alleged mental anguish. There are two problems with ZoomInfo's argument. First, given that

14   Martinez has sufficiently alleged a mental injury to survive dismissal, there is no basis to dismiss

15   her claim for statutory damages, even if the Court were to accept ZoomInfo's argument. Second,

16   the Court disagrees with ZoomInfo's contention that statutory damages under Section 3344 are

17   limited to those who have alleged a mental injury. Without distinguishing between the kinds of

18   injury, Section 3344 allows the injury party to obtain "an amount equal to the greater of seven

19   hundred fifty dollars ($750) or the actual damages suffered by him or her as a result of the

20   unauthorized use" of her persona. Cal. Civ. Code § 3344(a). As reasoned in PeopleConnect,

21   "Section 3344 on its face does not require that a plaintiff have suffered mental anguish in order

22   to be awarded statutory damages." Id., 2021 WL 5050079, at *16. ZoomInfo cites to Miller v.

23   Collectors Universe, Inc. as standing for the principal that only mental anguish can support a

24

1    request for statutory damages. (Mot. at 16-17 (citing <u>Miller</u>, 159 Cal. App. 4th at 1006).) While

2    <u>Miller</u> focused on the legislative history suggesting that statutory damages were meant to

3    compensate mental injury, it contains no pronouncement that this the only basis for statutory

4    damages. <u>See Miller</u>, 149 Cal. App. 4th at 1006. As reasoned in <u>PeopleConnect</u>, an economic

5    injury can merit an award of statutory damages even though, "as a practical matter, it is not

6    difficult to imagine that a plaintiff seeking statutory damages will often have to rely on mental

7    anguish as the hook for statutory damages, assuming that she cannot prove actual damages or at

8    least actual damages in excess of $750." <u>PeopleConnect</u>, 2021 WL 5050079, at *16. Allowing

9    statutory damages for both kinds of injuries aligns with the purpose of the statute, which was to

10   protect non-celebrities, whose injuries are not likely as great as a celebrity's injury. <u>See KNB</u>, 78

11   Cal. App. 4th at 367. As such, the Court rejects ZoomInfo's argument.

12   **F.      Equitable Remedies**

13          ZoomInfo asks the Court to strike Martinez's request for equitable restitution on the

14   theory that any such relief is duplicative and unavailable given that she has an adequate remedy

15   at law. (Mot. at 17-18). ZoomInfo cites to a recent Ninth Circuit opinion on point, holding that

16   the court is precluded "from awarding equitable relief when an adequate legal remedy exists."

17   <u>Sonner v. Premier Nutrition Corp.</u>, 971 F.3d 834, 842 (9th Cir. 2020). Martinez does not dispute

18   this authority. But she argues that dismissal would be premature because the adequacy of the

19   legal remedy is unclear at this stage of the proceedings given that her legal claims may not lead

20   to the recovery of all restitution to which she could be entitled. The Court finds some merit in

21   Martinez's argument. In <u>Sonner</u>, the Ninth Circuit found an adequate legal remedy where the

22   plaintiff admitted she sought the exact same amounts under both her legal and equitable claims.

23   <u>See Sonner</u>, 971 F.3d at 844. Here, the record is not clear as to what differences may exist as

24

1    between the damages Martinez seeks. And as Martinez argues, restitution might require

2    disgorgement of profits, which could be greater than the fair market value of her likeness.

3    ZoomInfo's reply offers no contrary argument. At this stage of the proceedings, the Court

4    declines to dismiss the equitable remedies sought, though the denial is without prejudice.

5    **G.    Anti-SLAPP Special Motion to Strike**

6         ZoomInfo asks the Court to strike Martinez's complaint under California's Anti-SLAPP

7    law, Cal. Civ. Code § 425.16. The Court denies this request.

8         To succeed on a special motion to strike under Cal. Civ. Code § 425.16, the defendant

9    must first make a threshold showing that the challenged cause of action arises from protected

10   activity. See No Doubt, 192 Cal. App. 4th at 1026. If the defendant makes this showing, the

11   burden shifts to the plaintiff to demonstrate a probability of prevailing on the merits of the claim.

12   Id. Considering the pleadings and evidentiary submissions, the court considers whether "the

13   complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to

14   sustain a favorable judgment if the evidence submitted by the plaintiff is credited." Id. (citation

15   and quotation omitted) But "the court does not weigh the evidence or make credibility

16   determinations." Ross v. Kish, 145 Cal. App. 4th 188, 197 (2006) (citation and quotation

17   omitted). "Only a cause of action that satisfies both prongs of the anti-SLAPP statute—i.e., that

18   arises from protected speech or petitioning and lacks even minimal merit—is a SLAPP, subject

19   to being stricken under the statute." Navellier v. Sletten 29 Cal. 4th 82, 88–89 (2002). In other

20   words, "[i]f the plaintiff meets its burden the motion must be denied." Ross, 145 Cal. App. 4th at

21   197.

22        There are two problems with ZoomInfo's special motion. First, as explained above, the

23   speech at issue is commercial in nature and not protected speech—or "speech in direct

24

ORDER DENYING DEFENDANT'S MOTIONS - 14

connection with an issue of public concern." Cal. Civ. Proc. Code § 425.16. There are five

general considerations the Court can use to determine whether the speech touches on a matter of

public interest. See Piping Rock Partners, Inc. v. David Lerner Assocs., Inc., 946 F. Supp. 2d

957, 968 (N.D. Cal. 2013). Here, none of these weighs in ZoomInfo's favor. As alleged,

ZoomInfo's use of Martinez's persona proposes a commercial transaction targeting her, rather

than the public at large. There is no evidence to suggest that her persona is a matter of public

interest or that ZoomInfo's use of it would generate wide public interest. And ZoomInfo's use of

the persona appears to be to generate revenue, rather than general public interest. As such, the

Court finds that ZoomInfo's special motion fails at the first step. Second, even if ZoomInfo were

correct that its speech is a matter of public interest, the "motion must be denied" because

Martinez has shown a reasonable probability of prevailing on the merits of her claims. Ross, 145

Cal. App. 4th at 197. As such, the Court DENIES the special motion strike.

　　　　The Court also DENIES Martinez's request for fees and costs in opposing the motion.

Fees and costs are mandatory only where "a special motion to strike is frivolous or is solely

intended to cause unnecessary delay." Cal. Code Civ. Proc. § 425.16. Here, the Court is not

convinced that ZoomInfo's arguments are frivolous or solely intended to cause delay. On this

record, the Court finds it improper to award costs and fees, whether mandatory or discretionary.

**H.    Request for Judicial Notice**

　　　　ZoomInfo asks the Court to take judicial notice of four documents: (a) a webpage from

Martinez's employer identifying Martinez as an employee; (b) Martinez's LinkedIn page; (c) the

ZoomInfo directory preview for Martinez; and (d) the "about us" page for Martinez's employer.

Martinez opposes notice of all but the ZoomInfo directory preview.

1    The Court's review of a motion to dismiss under Rule 12(b)(6) is generally limited to the

2    pleadings. Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001). Looking beyond the

3    pleadings will converting the motion into one for summary judgment motion except in two

4    circumstances: (1) when to materials fit the incorporation-by-reference doctrine, or (2) when the

5    materials are capable of judicial notice under Federal Rule of Evidence 201. Khoja v. Orexigen

6    Therapeutics, Inc., 899 F.3d 988, 998 (9th Cir. 2018). But the Ninth Circuit has warned against

7    "[t]he overuse and improper application of judicial notice and the incorporation-by-reference

8    doctrine" which "can lead to unintended and harmful results," including the premature dismissal

9    of meritorious claims. Id.

10   The Parties dispute the propriety of taking judicial notice of websites, which is generally

11   outside the province of judicial notice. "Judicial notice under Rule 201 permits a court to notice

12   an adjudicative fact if it is 'not subject to reasonable dispute.'" Id. (citing Fed. R. Evid. 201(b)).

13   And a "fact is 'not subject to reasonable dispute' if it is 'generally known,' or 'can be accurately

14   and readily determined from sources whose accuracy cannot reasonably be questioned.'" Id.

15   (quoting Fed. R. Evid. 201(b)(1)–(2)). A "'high degree of indisputability'" is generally required

16   to justify judicial notice. Jespersen v. Harrah's Operating Co., Inc., 444 F.3d 1104, 1110 (9th Cir.

17   2006) (en banc) "Just because the document itself is susceptible to judicial notice does not mean

18   that every assertion of fact within that document is judicially noticeable for its truth." Khoja 899

19   F.3d at 999. While the Court can take judicial notice of information contained in a government

20   website, see Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 999 (9th Cir. 2010), no similar rule

21   extends to content on non-governmental websites. The Ninth Circuit has endorsed the view that a

22   court can "take judicial notice of the existence of the website in the public realm, but [it has]

23   decline[s] to notice that the contents of the website are true." Farrell v. Boeing Emps. Credit

24

1  Union, 761 F. App'x 682, 684 n.1 (9th Cir. 2019) (citation and quotation omitted) (considering a

2  request for judicial notice "regarding the Defense Finance and Accounting Service's website").

3  ZoomInfo's request to take notice of three websites containing information about

4  Martinez's employment exceeds the permissible bounds under Rule 201. ZoomInfo asks the

5  Court to conclude that information about Martinez's employment is "publicly and widely

6  available through various sources." (Reply to RJN at 2). It suggests that the Court can take notice

7  simply by acknowledging the "websites' existence in the public realm" without considering

8  "[w]hether the content is true." (Id.) But to reach that conclusion about Martinez's employment

9  and work history, the Court would have to consider the content of each cited website. ZoomInfo

10  fails to cite a single case that would make that conclusion permissible. Instead, ZoomInfo relies

11  on cases involving judicial notice of government websites. (See Request for RJN at 2; Reply at

12  1.) But the reasoning allowing for judicial notice of government websites does not apply to

13  commercial websites. And in both cases ZoomInfo cites, the courts only took notice of the

14  existence of the websites, not their content. See Farrell, 761 F. App'x at 684. n.1; Farina

15  Focaccia & Cucina Italiana, LLC v. 700 Valencia St. LLC, No. 15-CV-02286-JCS, 2015 WL

16  4932640, at *4 (N.D. Cal. Aug. 18, 2015). The Court declines to take notice of these exhibits—

17  doing so is improper under Rule 201 and unnecessary to resolve the Motion to Dismiss.

18  Given Martinez's non-opposition as to the preview of her ZoomInfo page, the Court takes

19  notice of it under the incorporation by reference doctrine. As such, the Court GRANTS in part

20  and DENIES in part ZoomInfo's Request.

21  **I.      Motion to Stay**

22  ZoomInfo asks the Court to stay this case until the Ninth Circuit resolves two appeals

23  pending before it. First, ZoomInfo argues that the appeal of Callahan v. Ancestry.com, No. 21-

24

1    16161 (9th Cir.) will provide important guidance on Article III standing as it relates to the claims

2    presented in this case. But that appeal has been dismissed and it is no longer relevant. Second,

3    ZoomInfo cites to <u>Sessa v. Ancestry.com</u>, No. 21-16618 (9th Cir.) as potentially providing

4    guidance on its anti-SLAPP claim. <u>Sessa</u> involves claims against Ancestry.com for violating

5    Nevada's right of publicity law and the district court there rejected Ancestry.com's motion to

6    dismiss under Nevada's anti-SLAPP law. In its reply brief, ZoomInfo suggests for the first time

7    that this case's standing analysis is also relevant.

8            Against this background, ZoomInfo asks the Court to stay this matter using its

9    discretionary authority under <u>Landis v. N.A. Co.</u>, 299 U.S. 248, 254-255 (1936). "Only in rare

10   circumstances will a litigant in one cause be compelled to stand aside while a litigant in another

11   settles the rule of law that will define the rights of both." <u>Id.</u> at 255. The Ninth Circuit requires

12   the Court to weigh the following "competing interests" in deciding whether to grant a stay: (1)

13   "the possible damage which may result from the granting of a stay"; (2) "the hardship or inequity

14   which a party may suffer in being required to go forward"; and (3) "the orderly course of justice

15   measured in terms of the simplifying or complicating of issues, proof, and questions of law

16   which could be expected to result from a stay." <u>CMAX, Inc. v. Hall</u>, 300 F.2d 265, 268 (9th Cir.

17   1962). And "if there is even a fair possibility that the stay . . . will work damage to some one

18   else," the party seeking the stay "must make out a clear case of hardship or inequity." <u>Landis</u>,

19   299 U.S. at 255.

20           The three factors do not merit entry of a stay. First, Martinez argues that there is a fair

21   probability of harm if the stay is imposed because she seeks injunctive relief for herself and on

22   behalf of a proposed class to cease what she asserts is a violation of California's right of

23   publicity and common law. ZoomInfo points out that Martinez can simply make use of the opt-

24

1   out procedure and have her information removed from ZoomInfo to avoid any harm. But this

2   would not apply to the class. ZoomInfo also argues that because it is entitled to an automatic stay

3   under the California anti-SLAPP law, there can be no harm. But the Court declines to weigh in

4   on the Parties' right to appeal. And even if ZoomInfo were entitled to an appeal, that does not

5   convince the Court that Martinez and the class would not be harmed pending such an appeal. The

6   Court finds a fair probability of harm pending a stay, which requires ZoomInfo to make out a

7   clear case of hardship or inequity. See Landis, 299 U.S. at 255.

8          Second, ZoomInfo has not made out a case of hardship or inequity under the "clear case"

9   standard or even the less demanding standard. ZoomInfo argues that it would suffer a hardship in

10  having to pay discovery costs in defending a case where it thinks its defenses are meritorious.

11  "[B]ut being required to defend a suit, without more, does not constitute a clear case of hardship

12  or inequity within the meaning of Landis." Lockyer, 398 F.3d at 1112 (quotation omitted).

13  ZoomInfo makes no other claim of hardship and the Court is unconvinced any such hardship

14  exists.

15         Third, the pending appeal in Sessa is unlikely to help simplify the issues in this case.

16  ZoomInfo's Motion only argues that Sessa will provide guidance on its anti-SLAPP claim. But

17  the question in Sessa is not likely helpful given that it involves claims under Nevada law and

18  involves different websites that advertise subscriptions in different ways. Given these

19  differences, the Court finds it likely that the Ninth Circuit's analysis will be of only persuasive

20  value. And ZoomInfo failed to timely raise any argument as to why Sessa would provide

21  guidance on standing, waiving any such argument.

22

23

24

1      Having considered the three factors, the Court finds no merit in granting a stay. While the

2   Ninth Circuit could potentially provide some useful guidance in <u>Sessa</u>, the equities here favor

3   allowing this case to proceed on its own path. The Court DENIES the Motion to Stay.

4                              **CONCLUSION**

5      Martinez has sufficiently alleged a cognizable injury to satisfy Article III as to both of her

6   claims. The Court is unconvinced that ZoomInfo's alleged conduct falls outside of Section 3344

7   or that the Court should strike any of the remedies Martinez seeks. Similarly, the Court finds no

8   merit in ZoomInfo's special motion to strike under California's Anti-SLAPP law. The Court

9   therefore DENIES the Motion to Dismiss in full.

10      And while the Court GRANTS in part and DENIES in part the Request for Judicial

11   Notice, it DENIES ZoomInfo's Motion to Stay.

12      The clerk is ordered to provide copies of this order to all counsel.

13      Dated April 11, 2022.

14

15                        Marsha J. Pechman
                            United States Senior District Judge

16

17

18

19

20

21

22

23

24